IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUANITA LARACUENTE, on behalf of E** | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 04-CV-2278 |
| | : | |
| **JO ANNE B. BARNHART,** *Commissioner of the* | : | |
| *Social Security Administration* | : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                                                  **August   18  , 2005**

   Plaintiff Juanita Laracuente ("Plaintiff") brings this action on behalf of her son "E" seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying E's application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383(f).  Plaintiff and the Commissioner filed cross motions for summary judgment.  The Court designated United States Magistrate Judge Linda K. Caracappa to submit a Report and Recommendation.  See 28 U.S.C. § 636(b)(1)(B); Local R. Civ. P. 72.1(d)(1)(C).

   Magistrate Judge Caracappa has recommended that the Court grant the Commissioner's Motion for Summary Judgment and deny Plaintiff's Motion.  Because Plaintiff has objected to the Magistrate Judge's Report and Recommendation, the Court must "make a de novo determination of those portions of the record or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  Having reviewed the Report and Recommendation and Plaintiff's objections thereto, the Court will approve and adopt the Report and Recommendation.

**I.**  **Procedural History**

   E is a fifteen-year-old male born on May 24, 1990.  (R. at 67).  Plaintiff first applied for

SSI on his behalf on October 8, 1998. The application was denied and Plaintiff did not seek further review. (R. at 49-52). Plaintiff reapplied for SSI on October 25, 1999, alleging that he suffered from attention deficit hyperactivity disorder ("ADHD"), a learning disability, and a speech and language deficit. (R. at. 53). When the application was denied, Plaintiff requested a hearing before an administrative law judge ("ALJ"). The hearing took place on March 22, 2001. In an opinion issued on April 26, 2001, the ALJ determined that E has "attention deficit/hyperactivity disorder and a learning disability, which are severe impairments." However, the ALJ also found that E's impairments do not equal or functionally equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4 (20 C.F.R. § 416.924(d)) and that accordingly, E was not eligible for benefits. (R. at 12-21). The Appeals Council denied Plaintiff's request for review on July 13, 2001. (R. at 3-5). Plaintiff then appealed to this Court. On September 19, 2002, the District Court ruled that the ALJ's decision should be vacated and remanded to the ALJ for consideration of additional issues. See Laracuente v. Massanari, No. 01-4675 (E.D. Pa. Sept. 20, 2002) (Ludwig, J.). A second hearing was held on February 26, 2003 and the ALJ rendered his decision on March 24, 2003, once again finding that E was not entitled to benefits. Plaintiff now appeals the ALJ's determination to this Court.

## II.     Standard of Review

### A.     The Commissioner's Decision

Judicial review of a Social Security case is based upon the pleadings and the transcript of the record. 42 U.S.C. § 405(g). The scope of the Court's review of the Commissioner's decision is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's

findings of fact.  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Jeserum v. Sec'y of the United States Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995).

"The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)); see also Plummer, 186 F.3d at 427 (noting that "substantial evidence" has been defined as "more than a mere scintilla").  "The court cannot conduct de novo review of the Commissioner's decision or re-weigh the evidence of record." Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998).

### B. The Magistrate Judge's Report and Recommendation

The Court must review de novo those portions of the Magistrate Judge's Report and Recommendation to which Plaintiff has objected.  See 28 U.S.C. § 636(b)(1)(C).  The Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate." Id.  In considering the Plaintiff's objections to the Report and Recommendation, the Court has independently reviewed the entire record, including the Report and Recommendation, the ALJ's decision, the transcript of the hearing, the hearing exhibits, and the summary judgment briefs.

### III. Social Security Law

Title XVI of the Act provides for the payment of disability benefits to indigent persons

under the SSI program.  42 U.S.C. § 1382(a).  A child is considered "disabled" and thereby entitled to benefits under the Act if he or she "has a medically determined physical or mental impairment which results in marked or severe functional limitations, and which can be expected to last for a continuous period of not less than 12 months."  Id. at § 1382c(a)(3)(C)(I).  The claimant carries the initial burden of proving disability.  Plummer, 186 F.3d at 428.

Under the Social Security regulations, an application for child disability benefits is evaluated according to a three-step sequential process.  20 C.F.R. § 416.924.  This process requires the presiding ALJ to review in sequence whether the child: (1) is engaging in substantial gainful activity; (2) has a medically determinable impairment or combination of impairments that is severe; and (3) whether the child's impairments, considered alone or in combination, meet or equal any listing set forth in Part 404, Subpart P, Appendix 1.

### IV.     The ALJ's Decision

Using the sequential evaluation process, the ALJ initially found that E had satisfied the requirements of step one because he had never engaged in substantial gainful activity since August 8, 2000.  (R. at 327).  At step two, the ALJ found that E suffers from a "medically determinable learning disorder, an attention deficit hyperactivity disorder, an adjustment disorder with mixed emotional features, a borderline intellectual functioning disorder, and a speech and language deficit disorder which are severe within the meaning of 20 C.F.R. § 416.924(c)."  (R. at 327).  Consequently, the ALJ progressed to step three of the analysis.  There, he found that E's impairments "are not of such severity so as to medically meet or equal the severity of any impairment as cataloged in Part B of Appendix 1 to Subpart P, 20 C.F.R. Part 404," and that E did not have "any impairment or combination of impairments, which is functionally equivalent in

severity to the listings of Appendix 1." Because E's impairments did not satisfy the step three requirements, the ALJ found that he was not disabled and consequently not entitled to benefits. (R. at 327).

V.    <u>Analysis</u>

In her Report and Recommendation, Magistrate Judge Caracappa found that the ALJ's determination of whether Plaintiff's impairments met or equaled the listings was supported by substantial evidence. Plaintiff has objected to that finding. Accordingly, the question before the Court is whether there is substantial evidence in the record to support the ALJ's finding that E's impairments are not "functionally equivalent" to a listed impairment.

Under the Social Security regulations, the "functional equivalence" of a child's impairments depends on the degree to which the impairment interferes with the child's ability to function in each of six domains: "(i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being." 20 C.F.R. § 416.926a(b)(1). For an applicant's impairments to be considered "functionally equivalent," he or she must have either "marked" limitations in two domains or "extreme" limitations in one domain. 20 C.F.R. § 416.926a(d). A "marked" limitation is defined as an impairment that "interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme limitation," in turn, is defined as an impairment that "interferes <u>very</u> seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3) (emphasis added).

After applying the test to E's impairments, the ALJ found that E does not have an

"extreme" functional limitation in any domain, has a "marked" limitation in the domain of "acquiring and using information," has "less than marked" functional limitations in the domains of "attending and completing tasks" and "interacting and relating with others," and has no functional limitations in the domains of "moving about and manipulating objects," "caring for yourself," and "health and physical well-being."

Plaintiff objects to the ALJ's findings with respect to the domains of "attending and completing tasks" and "caring for yourself."

### A. E's limitation in attending and completing tasks

Plaintiff first challenges the ALJ's finding that E's limitation in the domain of "attending and completing tasks" was "less than marked." In his evaluation of E's functioning in this domain, the ALJ noted that "the claimant displays poor memory and limited focus of attention, and exhibits difficulty in sustaining attention, concentration, mental control, and working memory, indicative of a highly impulsive and poorly regulated response style." (R. at 325). The ALJ nevertheless went on to conclude that the "concentration" and "attention" problems E has experienced do not rise to the level of a "marked" limitation, citing (1) E's Global Assessment of Functioning ("GAF") score of 55; (2) the improvement in E's symptomatology when he complies with his treatment regimens; and (3) reports from E's teachers that he is able to keep up with his class. (R. at 325).

The Court finds that the ALJ's findings are supported by substantial evidence in the record. In the domain of "attending and completing tasks," the severity of a child's limitation, i.e., whether it is moderate, "marked" or "extreme," depends on "how well the claimant is able to focus and maintain attention, and how well the claimant begins, carries through, and finishes

activities, including the pace at which the claimant performs the activities, and the ease with which you change them." 20 C.F.R. § 416.926a(h).  The question, therefore is not <u>whether</u> E's impairments interfere with his ability to focus and maintain attention, but <u>the degree of</u> that interference.  A review of the evidence in the record suggests that the interference could reasonably be characterized as "moderate" rather than "marked."

     First, many of the experts who have evaluated E have determined that his impairments are only moderate.  Dr. J.J. Kowalski, for example, filled out a Childhood Disability Evaluation form for E on March 16, 1999.  He found that E showed "no evidence of limitation" in the areas of motor, social, and personal functioning and that E's limitation in cognitive/communicative functioning was "less than marked."  (R. at 244-247).  Dr. Jaime Loyola, a bilingual psychologist, evaluated E on January 26, 1999.  She found that E's "high rate of retention and acquisition indicate that he is making progress in the reading area," and recommended that E should be considered a "non-exceptional student."

     Second, as the ALJ noted, E scored a 55 on the GAF test.[1]  A GAF rating between 51 and 60 means "<u>moderate</u> difficulty in social, or <u>school</u> functioning[.]"  See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) (emphasis added).

     Third, the record suggests that E is able to perform at a satisfactory level in the classroom. In a Teacher/Counselor Questionnaire she filled out, Martha Jimenez, E's 5th Grade teacher, stated that E receives special education in math, speech therapy, and counseling at school and

---

[1] GAF measures the psychological, social, and occupational functioning levels of an individual.  See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994).

that he cannot easily remember a concept the first time it is explained to him. Nevertheless, she represented that "he works at the class pace, except for some occasions when he complains [that he is] frustrated because he doesn't understand. But mostly he keeps the rest of the class pace." Ms. Jimenez also completed a Child Functioning Questionnaire in January 2003, in which she stated that "most of the time [E] finishes tasks without teacher intervention." (R. at 355).

Plaintiff argues that the teacher's reports, when properly understood, do not support the ALJ's conclusion that E's limitations in attending and completing tasks is less than marked. E was held back for two years, which means that the children with which he is keeping pace are actually two years younger than he is. Thus, she argues, when considered in their proper context, Ms. Jimenez's reports actually weigh toward a finding of greater rather than lesser severity. Plaintiff's Objections to the Magistrate's Report and Recommendations ("Objections") at 5- 7.

The Court agrees that Ms. Jimenez's comments need to be examined in light of the age discrepancy between E and his classmates. But even in that light, her assessment still favors a finding that E's limitations are "less than marked." That E struggles to keep pace with students two years younger than he is leaves no doubt that his impairments interfere with his ability to "attend and complete tasks." But, as the Court noted above, the inquiry focuses not on whether E's impairments interfere, but the extent of the interference. A limitation that does not prevent E from keeping pace with children two years his junior is not so severe that it must be characterized as "marked."

Moreover, there is ample evidence in the record that at least some of the difficulty E has experienced in school is attributable to his lack of fluency in English. On January 11 and 21, 2000, Dr. Karen Dybner-Madero of the Children's Crisis Treatment center administered an

intelligence test.  Though E scored particularly poorly on the verbal section of the test, Dr. Dybner-Madero concluded that E's verbal scores were actually much higher than the test indicated.  She explained that the low score was "due more to the fact that the verbal section relies on strong English language and American cultural base."  (R. at 276-279).  Thus, E's lack of progress in school is not due entirely to his impairments; his English language deficiency is also to blame.  E's impairments may therefore be less severe than his school performance would suggest.

In sum, while the Court would not <u>necessarily</u> have reached the same conclusions as the ALJ, a reasonable mind could accept E's GAF score, the psychological evaluations, and Ms. Jimenez's reports, as "adequate to support the conclusion" that E has a "less than marked" limitation in the domain of "attending and completing tasks."  <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999).

### B. **E's limitation in "Caring for Yourself"**

Plaintiff also challenges the ALJ's finding that E does not have a functional limitation in the domain of "caring for yourself."

In the domain of "caring for yourself," a child's limitation is measured by "how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions and living area."  20 C.F.R. § 416.926a(k).

Plaintiff argues that the ALJ's factual findings show that E has at least a marked limitation in this domain.  Specifically, she points to the ALJ's findings that E "displays episodic

anger, temper tantrums," exhibits "a highly impulsive and poorly regulated response style," and manifests "demanding, manipulative, destructive, negative and/or provocative behavioral patterns." (R. at 325-326). As further evidence of E's limitations in this domain, Plaintiff points to E's referral to the emergency psychiatric unit in October 1998 after threatening suicide. (R. at 225-239). Plaintiff argues that the ALJ failed to even address any of this evidence in his analysis of the "caring for yourself" domain and consequently that his conclusions cannot possibly be supported by substantial evidence. Objections at 2-4.

      Plaintiff is correct that the ALJ did not explicitly consider any of the evidence she has referred to in his analysis of the "caring for yourself" domain.[2] But that is not to say that he ignored the evidence. To the contrary, he gave the evidence careful consideration in his analysis of other domains. The ALJ considered E's "highly impulsive and poorly regulated response style" in his analysis of the "attending and completing tasks" domain, where, as discussed above, the ALJ concluded that E's difficulties did not rise to the level of a marked limitation. The ALJ specifically addressed E's "demanding, manipulative destructive, negative and/or provocative behavioral patterns" in his analysis of the "interacting and relating with others" domain. There, he noted that despite these troubling behavior patterns, E's teachers had characterized him as being "friendly, liked by peers and teachers," "very respectful," "very cooperative," and "sweet and caring." (R. at 325). He therefore found that E's limitations did not interfere with his functioning to such an extent that they could be characterized as "marked."

---

[2] In his decision, the ALJ stated that Plaintiff did not "allege the existence of any significant limitations in this area of functioning, nor have any medical or educational sources indicated or suggested the existence of any such limitations." The ALJ accordingly concluded that "in this domain, the claimant has no limitation of functioning." (R. at. 325-326).

The Court finds that the ALJ was correct in analyzing the evidence on which Plaintiff would base a finding of "marked limitation" in the domain of "caring for yourself" in the domains of "attending and completing tasks" and "interacting and relating with others." To the extent that the evidence in question was probative of E's limitations in caring for himself, the substantial evidence on which the ALJ based his conclusions in the other domains controls. Accordingly, the Court finds that the ALJ's finding that E has no limitation in the domain of "caring for yourself" is supported by substantial evidence in the record.

### VI.   Conclusion

The ALJ's decision to deny Plaintiff benefits is supported by substantial evidence in the record, and Plaintiff's objections to the Magistrate Judge's Report and Recommendation are overruled. Accordingly, Plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be granted. An appropriate Order follows.

IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUANITA LARACUENTE**, on behalf of E | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 04-CV-2278 |
| | : | |
| **JO ANNE B. BARNHART**, *Commissioner of the* | : | |
| *Social Security Administration* | : | |

### ORDER

**AND NOW**, this 18th day of August, 2005, the Court having considered the parties' Motions for Summary Judgment and reviewed the Report and Recommendation of United States Magistrate Judge Linda K. Caracappa, Plaintiff's Objections, and the entire record, including the ALJ's decision, the transcript of the hearing, and the hearing exhibits, it is **ORDERED** that:

1. The Report and Recommendation is **APPROVED** and **ADOPTED**;

2. Plaintiff's Motion for Summary Judgment is **DENIED**;

3. Defendant's Motion for Summary Judgment is **GRANTED**;

4. Judgment is **ENTERED** in favor of Defendant; and

5. The Clerk of the Court shall mark this case **CLOSED**.

BY THE COURT:


\_\_S/Bruce W. Kauffman\_\_\_\_
**BRUCE W. KAUFFMAN, J.**